**NEW CASTLE COUNTY AIRPORT COMMISSION, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

Allegheny Airlines, Inc., Intervenor.

No. 19693.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 20, 1966.

Decided Nov. 17, 1966.

Petition for Rehearing En Banc Denied Jan. 9, 1967.

Mr. Robert M. Beckman, Washington, D. C., for petitioner.

Mr. Frederic D. Houghteling, Atty., C. A. B., with whom Asst. Atty. Gen.

Donald F. Turner, Messrs. Joseph B. Goldman, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, C. A. B., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondent. Mr. Lionel Kestenbaum, Atty., Dept. of Justice, and John H. Wanner, Gen. Counsel, C. A. B., at the time the record was filed, also entered appearances for respondent.

Mr. Edwin I. Colodny, Washington, D. C., for intervenor. Mr. David B. Armstrong also entered an appearance for intervenor.

Before BAZELON, C. J., WILBUR K. MILLER, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge.

■ Petitioner seeks review of orders of the Civil Aeronautics Board which amended the certificate of public convenience and necessity of Allegheny Airlines, a federally subsidized local-service carrier serving Wilmington, Delaware, so as to delete Wilmington as a separate intermediate point on Allegheny's route segment 3, which runs from New York to Pittsburgh via Philadelphia and Wilmington. The Board acted under section 401 (g) of the Federal Aviation Act,[1] which authorizes it to amend any carrier's certificate if the public convenience and necessity so require, and pursuant to the Board's "use it or lose it" policy,[2] whereby cities which do not make sufficient use of subsidized air service to justify its cost to the carrier and the government are subject to decertification proceedings under section 401(g). Petitioner, a governmental agency operating the Wilmington Airport, challenges the Board's action and the consequent loss of direct service between Wilmington and Pittsburgh. We find the Board's action free of reversible error.

■ The Board made its decision by weighing several factors: the inconvenience to Wilmington passengers in having to use the extensive westward services of the nearby Philadelphia airport, the volume of traffic that would be affected by the deletion, the amount of subsidy cost required to maintain the Wilmington service. This factor balancing approach is a proper method for determining what is required by the public convenience and necessity. See Outagamie County, Wis., v. CAB, 355 F.2d 900, 906–908 (7th Cir. 1966). The Board's findings as to the various factors are amply supported by the record. In appraising the overall public interest, the Board emphasized that Wilmington was in a unique position, since the relatively short driving time to the Philadelphia airport, where more frequent service is of course available, in effect gives Wilmington residents the benefit of direct service from a nearby airport.

■ Petitioner contends that the balancing approach, though utilized by the Board in proceedings to certify a regional airport, is contrary to the Board's established approach in decertification proceedings involving the "use it or lose it" policy. Under that established approach, petitioner says, deletion is precluded if the minimum use of five enplanements per day is met. But the Board's policy statement regulation expressly advises that the 5 per day factor was a necessary but not sufficient condition of continuation of service.[3] However useful as a guideline, it was not made a decisive criterion against decertification. When not controlled by a

1. 49 U.S.C. § 1371(g).

2. 14 C.F.R. § 399.11 (1966).

3. The regulation, 14 C.F.R. § 399.11(b) (1966), states: Under this "use it or lose it" policy, the Board will require each city to originate an average of five or more passengers per day during the 12-month period following the initial 6 months of operations * * *. A city generating the bare traffic minimum during this trial period cannot safely assume that continued service is assured; the Board expects most cities to exceed the minimum requirements.

regulation even an established approach or precedent may be modified or over-ruled. An administrative agency concerned with furtherance of the public interest is not bound to rigid adherence to precedent.[4] It may switch rather than fight the lessons of experience. An agency reversing its course should supply an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the need for adherence to standards.[5] But petitioner does not show that the case at bar involves any such reversal. It adduces no precedent wherein the Board held that the 5 per day standard precluded decertification notwithstanding factors substantially similar to this case in terms of alternative convenience, high subsidy cost and low volume. The Board acted properly in emphasizing the key factors that loomed large in this proceeding.

Petitioner does not advance its position by arguing that it had no advance notice that a novel approach would be used. There was novelty in the facts—at least in the context of a "use it or lose it" decertification proceeding.[6] Moreover, reference to a balancing approach as novel is a strange argument. Without minimizing the need or importance of articulation of subsidiary de-

cisional criteria and working rules, a "balancing" approach would seem to be inherently available to an agency engaged in the task of charting the public interest in the varying situations presented for determination. It may be assumed, at least for sake of discussion, that there may be reversible error where a prior agency approach has misled a party to fail to offer proof on a point the agency has now treated as crucial. Here, however, petitioner offered evidence on the key factors considered in the Board's opinion, convenience vel non of the Philadelphia airport, anticipated volume of traffic, and subsidy costs; and petitioner makes no claim that there is material evidence that it did not submit but would have submitted if it had known that a balancing approach would be used.

Petitioner has a valid point in its contention that the Board's ultimate finding was that the public convenience and necessity did not require continuance of the service, whereas the statutory test is satisfied only if the Board finds that the public convenience and necessity affirmatively requires deletion. We are not prepared to treat the difference as inconsequential, as the Government urges. But this claim was not made before the Board. In view of the complete factual record and the clear statement in the

---

4. Pinellas Broadcasting Co. v. FCC, 97 U.S.App.D.C. 236, 238, 230 F.2d 204, 206, cert. denied, 350 U.S. 1007, 76 S.Ct. 650, 100 L.Ed. 869 (1956); Philadelphia Television Broadcasting Co. v. FCC, 123 U.S.App.D.C. 298, 359 F.2d 282 (1966). As Judge Prettyman aptly noted (230 F. 2d at 206): "The Commission's view of what is best in the public interest may change from time to time. Commissions themselves change, underlying philosophies differ, and experience often dictates changes."

The same philosophy also permits modification of a policy crystallized in a regulation, provided the regulation is duly modified.

5. Compare City of Lawrence, Mass. v. CAB, 343 F.2d 583 (1st Cir. 1965). The court had under consideration the Board's order in the New England Regional Airport Investigation. It affirmed the order

permitting Northeast Airlines to delete service to Lawrence, Massachusetts, in view of the key fact of "the proximity of Lawrence to Boston and the ready accessibility of Lawrence to Boston." However it reversed, and remanded, the order for deletion of service at New Haven and consolidation with service at Bridgeport. The court noted the Board's departure without explanation from the reasoning of earlier cases, and also referred to "internal inconsistencies" with other aspects of the same proceeding. *Id.* at 588; see West Ohio Gas Co. v. Public Util. Comm. of Ohio, 294 U.S. 63, 71, 55 S.Ct. 316, 79 L.Ed. 761 (1935).

6. Similar factual situations led to deletion of service in other types of proceedings. See, *e. g.,* City of Lawrence v. CAB, *supra,* note 5, as to deletion of service at Lawrence.

Board's opinion setting forth the reasons for deletion it found persuasive, we do not think the interest of justice would be served by remand for further proceedings.

Affirmed.