In the Matter of the Request of Gary WHITEHEAD for Telephone Service from Northwestern Bell Telephone Company.

SHERBURNE COUNTY RURAL TELE-PHONE COMPANY, Relator,

v.

Gary WHITEHEAD, Respondent,

Northwestern Bell Telephone Company, Respondent,

Minnesota Public Utilities Commission, Respondent.

No. C0–86–1274.

Court of Appeals of Minnesota.

Jan. 20, 1987.

W.R. Glaeser, Waconia, for Sherburne County Rural Telephone Co.

Gary Whitehead, pro se.

Stephen T. Refsell, Phil Ringgenberg, Minneapolis, for Northwestern Bell Telephone Co.

Hubert H. Humphrey, III, Atty. Gen., Stephen P. Kilgriff, Deputy Atty. Gen., St. Paul, for Minnesota Public Utilities Com'n.

Scott J. Koch, St. Paul, for amicus curiae Minnesota Telephone Ass'n.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal from an order of the Minnesota Public Utilities Commission directing Northwestern Bell Telephone Company to provide telephone service to Gary Whitehead. Relator Sherburne County Rural Telephone Company argues that the order is in excess of statutory authority and is unlawful. We reverse.

## FACTS

Before purchasing land in Elk River, Minnesota, Gary Whitehead contacted Northwestern Bell Telephone Company (NWB) to ask if the land was within the company's service area. Whitehead planned to build a house and to operate a business there that involved transmitting data by telephone to a Twin Cities computer center for approximately 100 hours a month. By obtaining service from NWB he would avoid long distance charges. NWB indicated that the land was within its service area, and Whitehead proceeded to build his home. On March 18, 1986, NWB issued a work order and assigned Whitehead a telephone number.

The company contacted Whitehead on March 26 and told him his land was in the Sherburne County Rural Telephone Company (Sherburne) service area according to maps prepared by both companies. Sherburne offered foreign exchange service to the Twin Cities area at a cost of $200 per month, but Whitehead found the combination of cost and service unacceptable. He petitioned the Minnesota Public Utilities Commission (the commission) to determine whether his property was within the NWB or Sherburne service area and requested service from NWB.

The commission referred the matter to the Minnesota Department of Public Service (DPS) for evaluation and a recommendation. After referring to the commission's official map, the DPS advised that an unimproved area in the northeastern corner of Whitehead's property was in the NWB service area. It reached this conclusion by reasoning that the heavy line showing the service area boundary on the commission map results in a boundary line several hundred feet wide and that the actual service area boundary is the center of this area. By using the exact center of the boundary line as the true territorial boundary, the DPS concluded that a small portion of the Whitehead property is in the NWB service area.

The DPS advised that, whenever a potential subscriber's land extends into more than one telephone company's service area, the subscriber may choose service from either company by placing his interconnection "protector" in the preferred company's territory. Because Whitehead wanted service from NWB and was willing to pay the cost of cabling needed to connect his residence to a "protector" located in the area determined to be within the NWB area, the DPS recommended that he be given the option of purchasing service from NWB.

Sherburne disagreed with the recommendation, arguing that maps filed by both telephone companies show the Whitehead property to be within its service area. The company also disagreed with the recommendation that Whitehead could choose to receive service from NWB by placing a "protector" in the small, unimproved area of his property determined by the DPS to be within that company's service area. Sherburne was allowed to present its arguments to the commission in writing and orally at a June 10 meeting. The commis-

sion did not hold a hearing on the matter before issuing its July 2 order accepting the DPS recommendation and ordering NWB to provide service. The commission further ordered NWB to rely on the commission's official map.

Sherburne has appealed the order. Although Whitehead has moved into his new home, he does not have telephone service.

### ISSUE

Did the commission act arbitrarily and capriciously in ordering NWB to provide service to petitioner Whitehead?

### ANALYSIS

In reaching its decision, the commission found:

[T]here is no reasonably priced alternative that would allow Mr. Whitehead to have telephone service to his chief community of interest, the Minneapolis/St. Paul Metropolitan Area. Extended Area Service (EAS) is not available to Mr. Whitehead and neither Sherburne or NWB offer [Adjacent exchange service] (AES). NWB explained that it does not offer AES to subscribers living in exchanges that border the Metropolitan Area in order to control growth of the Metropolitan Area. Both Sherburne and NWB expressed concern over the number of other subscribers that might want AES if it were provided to Mr. Whitehead. Therefore, the Commission will order that NWB provide service to Mr. Whitehead at the northeast corner of his property, which is located in NWB's service area, with Mr. Whitehead being responsible for providing his own cabling from the point of interconnection to his residence.

As the finding indicates, the commission was faced with a situation where a potential telephone subscriber could not obtain reasonably priced service to the Twin Cities area. Whitehead needed this service for business purposes and had been told he could receive NWB service before building his home. He acted in reliance on this information. In order to accommodate Whitehead's needs, it was necessary to either find that a portion of his land was located within the NWB service area or alter the Sherburne service area based upon an inability to provide adequate service.

The commission accepted the DPS recommendation that a portion of the Whitehead property is within the NWB territory. The recommendation was based upon the commission's official map rather than the maps filed by the two telephone companies and interpreted by those companies as showing the entire Whitehead property within the Sherburne service area. The commission also determined that whenever a potential subscriber's property is located in two service areas, regardless of how small an area is involved, the subscriber may choose to purchase service from either company.

The commission has the exclusive right to grant authority to telephone companies to construct lines or exchanges for the furnishing of local service. Minn.Stat. § 237.16, subd. 1 (1984). The section further provides:

All telephone companies operating exchanges in the state of Minnesota as of the effective date of [this section] shall be entitled to receive a certificate of territorial authority from the commission authorizing such company to continue to serve the areas presently included within the exchange boundaries as indicated by the exchange boundary maps now on record with the commission * * *.

Minn.Stat. § 237.16, subd. 2. The commission is empowered to determine the style, size and kind of map to be filed by the telephone companies indicating their territorial boundaries and to require that the maps be kept current. Minn.Stat. § 237.16, subd. 3.

NWB and Sherburne agree that the maps prepared by the companies under this section indicate the Whitehead property is within the Sherburne service area. However, the commission did not address the maps filed by the companies in reaching its decision. Instead, it accepted the DPS rec-

ommendation based solely on its interpretation of an official map compiled by the commission. The findings, conclusions of law and order issued by the commission make no reference to its basis for disregarding maps prepared by the telephone companies and filed in compliance with Minn.Stat. § 237.16 in favor of its compilation of an official map.

An agency's decision is arbitrary and capricious when it represents the agency's will and not its judgment or when the decision is without evidence to support the conclusion. *Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 234, 172 N.W.2d 771, 776 (1969). Failure to explain reasons on the record may be evidence of an arbitrary decision. *Five Star Trucking, Inc. v. Minnesota Transportation Regulation Board*, 370 N.W.2d 666, 670 (Minn.Ct.App.1985).

Here, the commission was not faced with a situation where the companies disagreed over boundaries, perhaps making recourse to an independent determination necessary.[1] Rather, the commission disregarded the companies' maps and their agreement on boundaries, without explaining its reasons for doing so. This absence of explanation prompts us to conclude that the commission acted arbitrarily and capriciously.

We note that the commission ordered NWB in the future to base its advice to potential customers on the commission's official map rather than on the map it has filed with the commission. This indicates that the commission's decision departs from its previous practice. We recognize that an administrative agency is not bound to rigid adherence to precedent. *New Castle County Airport Commission v. CAB*, 371 F.2d 733, 734–35 (D.C.Cir.1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967). However, we also recognize that this does not mean that an agency may abandon its own precedent

without reason or explanation. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission*, 342 N.W.2d 348, 352–53 (Minn.Ct.App.1983) (citing *McHenry v. Bond*, 668 F.2d 1185, 1192 (11th Cir. 1982)). Failure to explain such a departure indicates that the agency's action is arbitrary and capricious. *Id.* at 352. Because the commission did not explain its reasoning in requiring NWB in the future to rely on its official map, this portion of the order is a further indication of arbitrariness and capriciousness.

We are not insensitive to Whitehead's desire for NWB service and his reliance on NWB's earlier indication that it would provide service. We also recognize the commission's effort to satisfy Whitehead's need for reasonably priced service to the Twin Cities metropolitan area. The problem here arises not from the commission's desire to provide the service Whitehead requested but rather from the means selected by the commission to reach this result.

The DPS report identified other alternatives. However, reliance on the DPS interpretation of the official map was the one identified alternative that allowed the commission to order NWB service without holding a hearing. By declaring that the exact center of the boundary line shown on the DPS map was, in fact, the precise boundary between service areas, the commission avoided initiation of an action under Minn. Stat. § 237.16, subd. 5. An action under that statute would have required a hearing and would have involved possible alteration of Sherburne's certificate of authority, which is based on the map Sherburne has filed with the commission, not on the DPS map. This court cannot condone the actions here of the commission which resulted in a de facto alteration of service boundaries without following the prescribed statutory procedures.

Because we have concluded that the commission acted arbitrarily and capriciously in

---

1. Had NWB and Sherburne filed maps indicating service in the same territory, Minn.Stat. § 237.16, subd. 2 provides that the commission

must hold a hearing before determining which company is entitled to a certificate of territorial authority.

disregarding maps filed in compliance with Minn.Stat. § 237.16, subd. 2, the decision must be reversed. Minn.Stat. § 14.69(f) (1984). Because of this decision, we need not address the commission's conclusion that, when a potential subscriber's property is located in two service areas, the subscriber may choose to purchase service from either company.

## DECISION

The commission acted arbitrarily and capriciously in ordering NWB to provide service.

Reversed.