By the Court.
 

 This is an action filed in this court, under its original jurisdiction, seeking to compel the respondent to obey an administrative order of the commission issued June 3, 1914, and known as administrative order No. 16. The order recites the dangers of railroad operation, and states that such dangers are increased by the use of what
 
 *478
 
 is designated as pusher engines at the rear of heavy trains, operating in conjunction with the engine on the forward end of such train, and ordering the use of air or power brakes on such pusher engine in connection with the air or power brake system controlling such train.
 

 The order specifically requires that the pusher engine be coupled to the last car and made a part of the train, and that all connections controlling the air or power brake system be properly made with such pusher engine. The order applies to all railroads operating in interstate commerce while operating in the state of Ohio. The New York Central Railroad not obeying the order, this action in mandamus is brought to compel obedience.
 

 It is contended on the part of relator that authority to make the order is conferred by Sections 502, 504, 551-4, 614-3, and 614-4, General Code, and that the power to enforce the order was conferred by Section 583 of the General Code of Ohio. It is not contended that any of these sections confer specific authority to require such connection of pusher engines; neither is it claimed that any section of the General Code makes any reference to pusher engines whatever.
 

 Without quoting the sections referred to, and without referring to their provisions, it is sufficient to say that those sections, and all other sections relating to the powers of the Public Utilities Commission, relate not to the safety of railroad employees or to the installation and maintenance of railroad safety appliances. The Public Utilities Commission is an arm of the Legislature, having
 
 *479
 
 such powers as are expressly conferred upon it. Those ■ powers are limited to compelling the performance by carriers engaged in intrastate commerce of all regulations relating to rates, service, and discrimination. The powers of the commission may be invoked when rates are unreasonable, when the service is inadequate, or when railroads exercise discriminatory practices as between shippers.
 

 It is not doubted that it is within the power of the Legislature to make certain requirements in the operation of trains, for the protection of railroad employees, in all intrastate operations, so long as the same are not calculated to impose unreasonable burdens upon interstate commerce. The provisions of the statute may be searched in vain to find any authority requiring all cars in any train to be equipped with air brakes, or that engines be so equipped that continuous connections can be made throughout the train between the engine at the front and the engine which is being employed as a pusher at the rear of the train.
 

 Counsel for relator cite
 
 Detroit, Toledo & Ironton Ry. Co.
 
 v.
 
 State,
 
 82 Ohio St., 60, 91 N. E., 869, 137 Am. St. Rep., 758. This decision is based not upon a general order of the commission but upon a legislative act, to-wit, Section 3365-275, Revised Statutes, now Section 8950, General Code. In that case this court held that railroads might be compelled to install automatic couplers. Automatic couplers have come into such universal use in both intrastate and interstate commerce that that case has no importance upon the question of the right of a state law to require installation of automatic
 
 *480
 
 couplers. That case cannot, however, have any value as authority in the instant case, because its principles have apparently been overruled, so far as interstate commerce is concerned, in the case of
 
 Southern Ry. Co.
 
 v.
 
 R. R. Commission of Indiana,
 
 236 U. S., 439, 35 S. Ct., 304, 59 L. Ed., 661. We therefore find no authority for promulgating general order No. 16 as applied to interstate operations.
 

 There is another feature of this case which would be conclusive of the question involved, regardless of the matters already discussed. General order No. 16 cannot be effectively enforced without requiring appliances, not only upon the pusher engine itself, but also upon those cars which may be found still in service not now equipped with air-brake attachments. Section 1 of the Federal Safety Appliance Act of March 2, 1893 (27 Stats, at L., 531, Section 8023, Barnes’ Fed. Code, Section 8605, U. S. Comp. Stats.), and the second section of the act, amendatory thereto, under date of March 2, 1903 (32 Stats, at L., 943, Section 8033, Barnes’ Fed. Code, Section 8614, U. S. Comp. Stats.), provide that only 50 per cent, of cars moving in interstate traffic are required to be equipped with power or train brakes. The Interstate Commerce Commission has by general order raised the requirements to 85 per cent. Federal agencies, therefore, permit 15 per cent, of the cars operated in interstate traffic to be equipped with hand brakes. To give effect to general order No. 16 of the Public Utilities Commission would immediately require all trains in interstate traffic to be fully equipped with power brakes with necessary couplings and attach
 
 *481
 
 ments. We are therefore brought face to face with the recent case of
 
 Napier, Atty. Genl.,
 
 v.
 
 Atlantic Coast Line Rd. Co.,
 
 decided by the Supreme Court of the United States on November 29, 1926, 47 S. Ct., 207. It has been argued by counsel for the relator that that case does not control, because it refers only to appliances and not to the manner of operating trains. It has already been seen, however, that appliances become necessary, and inasmuch as the Interstate Commerce Commission has authority in these matters, though it has not seen fit to exercise such authority to the full extent of the power conferred, the field is regarded as fully occupied and the jurisdiction of the state commission is excluded. Upon the authority of the
 
 Napier case, supra,
 
 as well as upon the lack of jurisdiction of the Public Utilities Commission of Ohio, the peremptory writ of mandamus must be denied.
 

 Writ denied.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkabe, JJ., concur.
 

 Robinson, J., not participating.