Bevis, J.
 

 The basic contention of the plaintiffs in error is that the commission was without jurisdiction or authority to make the orders in question. Some complaint is made that no evidence, beyond that contained in the companies ’ annual reports and in certain proposals filed by them, was formally received by the commission; but this contention' was not greatly insisted upon, and is not, in our opinion, of sufficient importance here to require further discussion.
 

 The arguments of the plaintiffs in error may be summarized as follows:
 

 The jurisdiction and power of the Public Utilities Commission are based upon and limited by the statutes pertaining to it.
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 96 Ohio St., 270, 117 N. E., 381. Its authority over corporations devoting their property to public utility service is limited to the regulation of rates, services, and discrimination.
 
 State, ex. rel. Public Utilities Commission,
 
 v.
 
 New York Central Rd. Co.,
 
 115 Ohio St., 477, 154 N. E., 790. It has no authority to manage or conduct the internal affairs of public utilities companies,
 
 Morgan Run Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 98 Ohio St., 218, 120 N. E., 295;
 
 City of Cleveland
 
 v.
 
 Public Utilities Commission,
 
 102 Ohio St., 341, 131 N. E., 714; nor to exercise very much, if any, direct control over their payment of dividends.
 

 Whether or not the orders of the commission were unreasonable is largely a question of fact upon which the finding of the commission will not be disturbed by this court unless manifestly against the weight of the
 
 *559
 
 evidence.
 
 Lykins
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 376, 154 N. E., 249;
 
 Schelling
 
 v.
 
 Public Utilities Commission,
 
 111 Ohio St., 410, 145 N. E., 865.
 

 In our opinion, the commission’s orders were not against the weight of the evidence.
 

 Were these orders unlawful in that they were beyond the commission’s power and authority?
 

 Section 8623-38, paragraphs (a), (b), and (c), General Code, provide as follows:
 

 “(a) A corporation may declare dividends payable in cash, shares, or other property out of the excess of the aggregate of its assets less the deductions hereinafter required over the aggregate of its liabilities plus stated capital.
 

 “(b) In computing the excess of the assets, deduction shall be made for depletion, depreciation, losses, and bad debts. In computing the excess of assets for the purpose of determining the fund available for a dividend payable otherwise than in shares of a corporation deduction shall also be made for the unrealized appreciation, if any, appearing on its books unless the amount thereof shall have been transferred to or included in stated capital. If its articles so provide, a corporation whose business consists substantially of the exploitation of wasting assets, may pay dividends without making deduction for the depletion of such assets resulting from lapse of time or from the consumption or sale of such assets incidental to their exploitation.
 

 “(e)
 
 No corporation shall declare or pay a dividend
 
 in cash or other property
 
 when there is reasonable ground for believing that it is unable or, by the payment of the dividend, may be rendered unable to satisfy its obligations and liabilities.”
 

 Section 8623-123&, General Code, provides as follows : “The directors of a corporation shall not declare or pay dividends or authorize the withdrawal or dis
 
 *560
 
 tribution of any part of its assets except as provided in this act * *
 

 Section 614-8, General Code, provides as follows: “The commission shall have
 
 general supervision
 
 over all public utilities within its jurisdiction as hereinbefore defined, and shall have the power to examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their properties are leased, operated, managed, and conducted with respect to the adequacy or accommodation afforded by their service, and also with respect to the safety and security of the public and their employes, and with respect to their compliance with all provisions of law, orders of the commission, franchises and charter requirements. The commission, either through its members or inspectors of employes, duly authorized by it, may enter in or upon, for purposes of inspection, any property, equipment, building, plant, factory, office, apparatus, machinery, device and lines of any public utility.”
 

 Section 614-10, General Code, provides as follows:
 

 “The commission may establish a system of accounts to be kept by public utilities, or classify utilities and prescribe a system of accounts for each class and prescribe the manner in which such accounts shall be kept. * * * It may also, in its discretion, prescribe the form of records, to be kept by public utilities, and the commission may require that no other records be kept except as may be required by the laws of the United States or as may hereafter be required by the laws of this state. The commission shall, at all times, have access to all accounts kept by public utilities, and may designate any of its officers or employes to inspect and examine any and all such accounts.
 

 ‘ ‘ The commission, may,
 
 if it shall determine that any expenditures or receipts have been improperly charged or credited, order the necessary changes in such accounts.”
 

 
 *561
 
 Section 614-49, General Code, provides as follows: “Every public utility shall carry a proper and adequate depreciation or deferred maintenance account, whenever the commission after investigation shall determine that a depreciation account can be reasonably required. The commission shall ascertain, determine and prescribe what are proper and. adequate charges for depreciation of the several classes of property for each public utility. The charge for depreciation shall be such as will provide the amount required over and above the cost and expense of maintenance to keep the property of the public utility in a state of efficiency corresponding to the progress of the art or industry. The commission
 
 may prescribe such changes in such charges for depreciation from time to time as it may find necessary
 

 Section 614-50, General Code, provides as follows: “The moneys for depreciation charges thus provided
 
 for shall be set aside out of the earnings
 
 and carried as a depreciation fund. The moneys in such fund may be expended in new construction, extensions or additions to the property of the public utility, or invested, and if invested, the income from the investment shall also be carried in the depreciation fund.
 
 Such fund
 
 and the proceeds thereof,
 
 may be used for the purpose of renewing, restoring, replacing or substituting depreciated property
 
 in order to keep the plant in a state of efficiency. Such fund and the proceeds or income therefrom
 
 shall be used for no purpose other than as provided in this section, except upon the approval of the commission.”
 
 (Italics ours.)
 

 It appears from the record that at the beginning of the period in question the Ohio Central Telephone Corporation had no earned surplus, and that during said years it operated at a net deficit of approximately $198,000. Nevertheless, during that period, dividends were paid in the sum of $182,525. In the case of the Mt. Yernon Company it appears that there was no
 
 *562
 
 earned surplus at the beginning of the period in question; that during that period the net operating income was $14,520, and that dividends of $68,250 were paid.
 

 In addition to these dividend payments large service fees were paid to the Middle Western Telephone Company, which owned all but the qualifying shares of the outstanding common stock.
 

 In order to create an apparent surplus from which dividends might be paid, the officers and directors of the Ohio Central Telephone Corporation diverted from the depreciation reserve accounts of the predecessor companies, whose properties it acquired, the accumulated amounts therein. The Middle Western Telephone Company turned back into the treasury of the Ohio Central Telephone Corporation, to decrease its liabilities, 2,675 shares of its common stock, then valued at $200,625. And this apparent surplus was further swelled by a purported revaluation of the outstanding shares of common stock and by purported donations from other corporations.
 

 The plaintiffs in error claim that so far as the payment of dividends is concerned, they are governed only by the same rules of law as other corporations. In our opinion there is this great difference: Whereas, the management of other corporations is responsible only to stockholders and creditors, the management of a public utility company is also responsible to the public, which has a vital interest in the preservation of the corpus of the property dedicated to its use. We hold that the commission has sufficient power to protect this public interest.
 

 In so far as these practices constituted a diversion of moneys already in the depreciation fund, or. a failure to credit such fund out of earnings with amounts sufficient to place, preserve and maintain the property in proper condition, the orders of the commission were within the specific language of the sections of the General Code above quoted.
 

 
 *563
 
 The payment of dividends and charges from moneys that should be put into the depreciation, fund for proper purposes is in effect payment out of capital.
 
 Michigan Public Utilities Commission
 
 v.
 
 Michigan State Telephone Co.,
 
 228 Mich., 658, 200 N. W., 749;
 
 Monroe Gaslight & Fuel Co.
 
 v.
 
 Michigan Public Utilities Commission
 
 (D. C.), 292 F., 139. Deterioration of the property for want of the replacements and renewals such funds should provide works a diminution of the capital of the company. Such payments, if persisted in, must ultimately result in the impairment of the public service to which the property is dedicated. It cannot be doubted that the preservation of the property in order to preserve the character of the service was the object of the legislation referred to.
 

 But we do not believe that the power of the commission to prevent the spoliation of the company’s property through the improper payment of charges and dividends is restricted to the technical depletion or starvation of the depreciation reserve. Section 8623-38, paragraph (c), G-eneral Code. The findings of the commission are in substance that the charges and dividends in question were paid, not from earnings or from surplus, but from capital, and the orders of the commission are that such practices cease. We are of the opinion that the jurisdiction and powers of the commission are broad enough to sustain its action. The existence of such power has been recognized by the courts of this state.
 
 Pollitz
 
 v.
 
 Public Utilities Commission,
 
 97 Ohio St., 191, 119 N. E., 507. If the commission may determine what expenditures must be charged to capital account, and what must be charged to current expenses, it follows that the commission may say whether capital may be depleted to pay dividends or whether they must be paid from earnings. See, also,
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 259, 148 N. E., 817;
 
 Reno Power, Light & Water Co.
 
 v.
 
 Public Service Commission of Nevada
 
 
 *564
 
 (D. C.), 298 F., 790;
 
 City of Knoxville
 
 v.
 
 Knoxville Water Co.,
 
 212 U. S., 1, 29 S. Ct., 148, 53 L. Ed., 371.
 

 For the foregoing reasons the orders of the Public Utilties Commission are affirmed. ^
 

 Orders affirmed.
 

 Weygandt, C. J., Allen, Stephenson, Matthias and Zimmerman, JJ., concur.