April 7,
1936.

PETITION OF THE DERRY ELECTRIC COMPANY.

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Upton* orally), for the petitioner.

*Francis W. Johnston, Attorney-General,* and *Louis E. Wyman* (*Mr. Wyman* orally), for the State.

PAGE, J.   The petitioner insists strongly upon its right to rescind the foreclosure sale, and the case turns upon the answer to the question whether there is a right of rescission.   The validity of the foreclosed mortgage and the regularity of the proceedings in connection with the sale, while not clearly established by the record, are not understood to be questioned by the state.   The petitioner is not understood as claiming that the sale was wholly void, but merely that it is voidable.   Until the contrary appears, the sale may be assumed sufficient to pass the title to the property.   It lacked, however, power in itself to clothe the purchaser with the right to use the property in the public service.   The New Hampshire Gas and Electric Company could not operate in the territory formerly occupied by the Derry company without permission from the public service commission. P. L., *c.* 240, *s.* 21; *State* v. *Company,* 86 N. H. 16, 27.

The petitioner asserts, however, that the parties to the foreclosure effected a sale upon the supposition that the title to the property would carry with it the right to operate in the Derry territory. Upon that assertion is based the claim that the sale of the property should be rescinded. There are several reasons why the claim cannot be sustained upon the record before us.

(1) There is no finding of fact that there existed any such mutual mistake as the petitioner asserts, or that, if existent, it was an inducement to the sale.

(2) There is doubt, which, in view of the foregoing need not be resolved, whether the public service commission has any jurisdiction to find facts upon the basis of which the equitable relief of rescission could be granted.

(3) Even if the commission had such jurisdiction, or if we had it in such a proceeding as this, the facts that appear in the record do not conclusively support the assertion of the petitioner as to a mutual mistake.

In one of his briefs, the petitioner's counsel said: "The records of the Commission show that a petition was filed for approval of the transfer. This petition was subsequently withdrawn because it appeared that the transfer being involuntary, was not subject to the approval of the Commission." Whether that be an accurate statement, or whether, as stated by the case, the petition is still pending but is held in abeyance until the present petition shall be disposed of, the possibility is suggested that the purchaser and the petitioner understood, even after the sale, that approval by the commission was required and that the belief now asserted to have been relied on did not come into being until even later. At least, in the absence of a finding of fact, we could not take the assertion as conclusively proved.

Moreover, it does appear that the purchaser has not diligently sought, and been denied, the right to operate for failure of which it claims it should be permitted to rescind. The way was open, and for anything that appears, still is open for it to prosecute its petition for approval by the commission.

Even if the sale had been induced by the mutual belief that the purchaser would have the right to operate, yet after the true state of the law became known through the opinion in *State* v. *Company, supra,* the purchaser might have prosecuted to conclusion its petition for approval of the sale and leave to operate. Until it had done that, the purchaser was in no position to claim that through mistake of

law it had lost any of the expected benefit of its purchase. On the other hand, the seller (whether the Derry Company or the trustee for the bondholders) is perhaps in no position to ask for a rescission, since it does not appear that it has tendered back the purchase price or is able to perform an equitable equivalent.

The claim is made that if the purchaser were given authority to operate, it might be at the cost of an inquiry into the value of the property acquired. This expense seems to be the vital element of surprise or mistake upon which the purchaser relies. As already noted, it does not conclusively appear, nor is it found, that the sale was consummated in reliance upon any mutual mistake in that regard. And even assuming that fact, the materiality and seriousness of the surprise in that connection are not established. No ground for rescission appears in the record.

Upon the record, the petitioner cannot be found to be the owner of the tangible property sold on foreclosure. It cannot even be found to have a clouded or colorable or equitable title to it. There is therefore no occasion to consider the questions raised as to the powers of the commission in connection with the recapitalization of the petitioner. The former opinion in this case is withdrawn.

There is no necessity to inquire whether, if the right to rescind had appeared, the lender to the purchaser could claim by right of subrogation or otherwise the restoration to it of the securities retired by means of the loan; or whether, as a third party which has dealt directly or indirectly with fourth parties who hold the old securities, the lender is an outsider and must be left to collect the debt as best it may. The lender is not a party here. Its equities, if any, are not found, and its rights in a case of rescission could not be established by such a record as we now have.

The petition should be dismissed. If, in a proper proceeding, the petitioner should establish title to the property, it could have recourse to the commission again.

*Remanded.*

All concurred.