STATE EX REL. PUBLIC SERVICE COMMISSION ET AL., RELATORS, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,858.)

(Submitted October 1, 1938.   Decided November 15, 1938.)

[84 Pac. (2d) 335.]

*Mr. John W. Bonner,* for Relators, submitted an original and a reply brief, and argued the cause orally.

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher, Amici Curiae,* submitted a brief; *Mr. Rankin* argued the cause orally.

*Messrs. W. H. Hoover, J. V. Dwyer, J. C. Corrette, Jr., John C. Hauck* and *L. V. Ketter,* for Respondents, submitted an original and a reply brief; *Mr. Hoover* and *Mr. Corrette* argued the cause orally.

MR. CHIEF JUSTICE GODDARD delivered the opinion of the court.

This is an original proceeding on an alternative writ of supervisory control wherein the relators seek to have annulled

and set aside a writ of prohibition issued by the district court of Lewis and Clark county, which prohibited the Public Service Commission from assuming jurisdiction in a controversy between certain resident farmers in Gallatin county and the Montana Power Company, which owns and operates two dams on the Madison River for the purpose of generating electricity for public use.

In the complaint filed with the commission, the farmers alleged that they owned lands irrigable from the waters of the Madison River; that the Montana Power Company unreasonably and unlawfully stored water during the irrigation seasons, thereby depriving the farmers of the natural flow of the river, and that this was done although some of the farmers were water right holders prior to the Montana Power Company; but it is not alleged that the water rights have been adjudicated by decree of a court.

Counsel for the respective parties made able arguments to the court and submitted extensive briefs in the case, but there can be but one question for our determination, and that is as to the jurisdiction of the matter, which is purely and simply judicial.

The relief sought has nothing to do with the regulation of public utilities as contemplated by the statutes. The statutes were enacted for the benefit of the consumers of the utilities' products, and not to arbitrate controversies between the utilities and private persons.

That the legislature, acting through the Public Service Commission or otherwise, cannot exercise judicial powers is definitely set out in section 1, Article IV of the Constitution of Montana, wherein it is said: ''The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.''

The legislature has unequivocally precluded the commission from exercising any judicial powers in section 3882, Revised Codes: "In addition to the modes of procedure hereinafter prescribed in particular cases and classes of cases, said commission shall have power to prescribe rules of procedure, and to do all things necessary and convenient in the exercise of the powers by this Act conferred upon the commission; provided, that nothing in this Act shall be contrued as vesting judicial powers on said commission, or as denying to any person, firm, association, corporation, municipality, county, town, or village the right to test, in a court of competent jurisdiction, the legality or reasonableness of any fixed order made by the commission in the exercise of its duties or powers."

The commission in this case would have to adjudicate water rights in order to determine whether the Montana Power Company was entitled to store the water, and this is an exercise of a power the commission could not and does not have. The remedy of the farmers is clearly a matter for the courts,—the proper place to adjudicate water priorities and to enjoin the unlawful or unreasonable use of such waters.

There being no merit in the other contentions of relators, the petition for a permanent writ of supervisory control is denied and the proceeding is dismissed.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. JUSTICE STEWART, deeming himself disqualified, takes no part in the above decision.

MR. JUSTICE ANGSTMAN, Dissenting:

In January, 1938, a complaint was filed with the Public Service Commission by 26 farmers, in which they alleged that they are the owners of irrigable lands in the Madison River Valley; that the Montana Power Company, engaged in producing, delivering and furnishing electricity to its consumers for profit, in the year 1927 and for several years prior thereto, without the consent of the complainants impounded and stored

the waters of the natural flow of the Madison River by means of dams during the irrigating season and deprived complainants of waters to which they were entitled for irrigating purposes, and thus damaged their crops by lack of water; that the dams were known as the Hebgen Dam and the Madison River Dam; that at the Madison River Dam a hydro-electric generating plant is maintained. The complaint alleged that the Power Company maintains hydro-electric generating plants along the Missouri River, which is formed at Three Forks by the Gallatin, Madison and Jefferson Rivers; that the only facilities for storing water are on the Madison River, and that the two dams there maintained are used to store water for release for generating purposes at plants along the Missouri River in periods of low water in the Missouri caused by a decrease in the flow of the Gallatin and Jefferson Rivers; that the water rights of many of the complainants to the waters of Madison River were acquired long prior to the rights of the Montana Power Company; and that upon information and belief the utility company, in doing the acts complained of, proceeds upon the assumption that it is of greater importance that the waters of Madison River be stored for use in generating electric energy during periods of low water in the Missouri River than that complainants have water when needed for irrigating their crops. The complaint sets forth that the acts complained of constitute unreasonable and unjust practices and acts affecting and relating to the production and furnishing of light and power. The complaint requested a hearing, after which the utility company be ordered to desist from storing the waters of the natural flow of the Madison River during the irrigation season of 1938, and in future years, so as to deprive complainants of the waters to which they are entitled.

The commission noticed the matter for hearing on February 8, 1938, by an order to show cause. Some time before February 8 the utility company filed a motion to quash the order to show cause, challenging the jurisdiction of the commission to hear the matters complained of, and requested that the motion

be set for February 2 and prior to the date of the hearing ordered on the complaint. The commission denied this request and set the motion for hearing on February 8, at the same time and place as had been fixed for the hearing on the complaint.

The utility company on February 4 made application to the respondent court for a writ of prohibition to restrain the commission from taking any further proceedings under the complaint for want of jurisdiction in the commission to hear the matters complained of. The court restrained the commission from proceeding further in the matter until final determination of the question by the court. After hearing, the court granted a peremptory writ of prohibition, restraining the commission from proceeding further in the matter, and directing the commission to dismiss the complaint before it and to make return to the court that it had done so. The commission applied to this court for a writ of supervisory control to annul the writ issued by the respondent court.

The single question involved going to the merits of the controversy is: Did the commission have jurisdiction to hear the matters complained of in the complaint?

In considering this question I keep in mind the well-settled rule that the commission is an administrative agency possessing only such powers as the legislature has seen fit to give it, and that reasonable doubts as to the grant of a particular power will be resolved against the existence of the power. (*State ex rel. Thacher* v. *Boyle,* 62 Mont. 97, 204 Pac. 378; *Great Northern Utilities Co.* v. *Public Service Com.,* 88 Mont. 180, 293 Pac. 294.)

The right of regulation has its source in the police power of the state, which the legislature may exercise directly or may delegate the power to an administrative agency, such as the Public Service Commission. (*City of Billings* v. *Public Service Com.,* 67 Mont. 29, 214 Pac. 608; *Public Service Com.* v. *City of Helena,* 52 Mont. 527, 159 Pac. 24; *State ex rel. Billings* v. *Billings Gas Co.,* 55 Mont. 102, 173 Pac. 799.)

The state may exert its police power in the regulation of a public utility whenever the public interests require, and a large discretion is vested in the legislature to determine not only what the public interests require, but what measures are necessary for the protection of such interests. (*City of Chicago* v. *O'Connell*, 278 Ill. 591, 116 N. E. 210, 8 A. L. R. 916.) And the power may be exerted to override contracts, privileges, franchises, charters or city ordinances. (*State ex rel. City of Kirkwood* v. *Public Service Com.*, 330 Mo. 507, 50 S. W. (2d) 114; *Milwaukee Elec. Ry. & Light Co.* v. *Wisconsin R. Com.*, 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254.)

Keeping in mind these principles, has the commission the statutory power to consider the matters complained of? It is my view that it has under the express provision of section 3897, Revised Codes, the pertinent parts of which are as follows: "Upon a complaint made against any public utility  *  *  * by any person or persons  *  *  *, provided such persons *  *  * are directly affected thereby that any  *  *  * practices, or act whatsoever affecting or relating to the production, transmission, or delivery or furnishing of heat, light, water, or power  *  *  * is in any respect unreasonable,  *  *  * the commission shall proceed, with or without notice, to make such investigation as it may deem necessary. But no order affecting such  *  *  * practice or act complained of, shall be entered without a formal hearing."

Section 3899, after providing for the fixing of just and reasonable rates after hearing, also provides: "If it shall in like manner be found that any  *  *  * practice, act, or service complained of is unjust, unreasonable  *  *  * or otherwise in violation of the provisions of this Act,  *  *  * the commission shall have power to substitute therefor such other *  *  * practices, service, or acts, and make such order relating thereto, as may be just and reasonable."

My associates hold that in order for the commission to hear the matters complained of, it will be necessary for it to exercise judicial functions which the statute, section 3882, prohibits it

from doing. Specifically they hold that in order for the commission to pass upon the matters complained of it must make an adjudication of water rights, which it is contended is a judicial question. The answer to this contention is twofold. In the first place, by filing the motion to quash before the commission, the utility company, for the purpose of that motion, admits the allegations of facts set forth in the complaint, one of which is that at least some of the complainants have the prior right to the use of the waters of Madison River. In considering the question of the jurisdiction of the commission raised by the motion to quash, the facts pleaded in the complaint must be taken as confessed for the purpose of the motion.

In the second place, if the utility company by answer raised an issue on the question of priority, its solution by the commission for the purpose of determining what action it would take on the complaint would not amount to the exercise of judicial powers. Where the commission is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or non-existence of those facts.

Spurr in volume 1, page 171, of his treatise on the Guiding Principles of Public Service Regulation, has this to say: "It must not be understood, however, from the illustration of the limitations upon commission jurisdiction which have been given, that these bodies are entirely powerless to inquire into questions of a judicial or quasi-judicial nature. If they are absolutely without authority to do so, very little business would be done. Commissions, as has been stated, will not determine the validity of statutes conferring jurisdiction upon them. That is in strict conformity with the command to keep off the domain of the courts. They may, however, and often do, interpret statutes— strictly a judicial function—so far as necessary to determine whether they have jurisdiction over the subject matter of the controversy. Commissions possess the power, in fact, to decide and declare the law present or antecedent, whenever necessary to the determination of any matter upon which their jurisdiction rests. If this were not so, commissions might spend much

of their time uselessly. It must be remembered in this connection that if the commission err in the determination of these questions, the interest of the parties are protected by the right of appeal to the courts. * * * Wherever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or non-existence of the requisite facts. Its jurisdiction cannot be affected by the circumstances that these facts are denied.''

The supreme court of California, in discussing this question where asserted water rights were claimed, in the case of *Limoneira Co.* v. *Railroad Com.*, 174 Cal. 232, 162 Pac. 1033, 1037, said: ''A large part of the briefs of learned counsel for petitioner is devoted to discussion of a claim that the Railroad Commission was without jurisdiction to determine any question as to the validity of petitioner's asserted rights of property in regard to the waters claimed by them in good faith. In view of the provisions of our Constitution and the Public Utilities Act, and our decisions thereunder, we do not see how it can be doubted that the Railroad Commission had the power to determine for the purposes of the exercise of its jurisdiction to regulate a public utility by the fixing of rates, subject to such power of review as is possessed by this court, all questions of fact essential to the proper exercise of that jurisdiction.'' The court also in the case just cited referred to its prior case of *Palermo Land & Water Co.* v. *Railroad Com.*, 173 Cal. 380, 160 Pac. 228, and from it quoted with approval the following: ''Wherever a court or board is authorized to act upon the existence of a certain state of facts, it has jurisdiction to determine the existence or nonexistence of the requisite facts, * * * its jurisdiction cannot be affected by the circumstance that these facts are denied.''

Generally speaking, it is the function of the courts to construe the Constitution and laws; yet an administrative officer or board in passing upon the extent of his or its jurisdiction must do so in the first instance, and in doing so is not exercising judicial functions.

The commission of the state of Missouri, in *United Commercial Travelers* v. *Marshall Bros. Livery Co.*, P. U. R. 1918E, 304, I think announced the correct rule when it said: "From force of circumstances and conditions necessarily arising in the administration of the affairs of the Government, both state and national, it is evident that those who are charged with official duties, whether executive, legislative, or judicial, must necessarily construe the Constitution and laws in numerous instances. Every department of the Government vested with statutory or constitutional powers must, in the first instance, at least, be the judge of its powers, or it could not act. This necessary construction by the departments and branches of Government, other than the judiciary, is commonly termed 'practical construction,' as distinguished from 'judicial construction.' From the very nature of the American system of Government, with Constitutions prescribing the jurisdiction and powers of each of the three branches of Government, it has devolved upon the judiciary to determine whether the acts of the other two are in harmony with the fundamental law. All the departments of Government are, however, unquestionably entitled and compelled to judge of the Constitution and statutes for themselves; but in doing so, they act under the obligations imposed in the instrument, and in the order of time pointed out by it. The judiciary speaks last upon the subject. These are principles universally recognized by the judiciary in defining and regulating the relations between the several branches of Government." To the same effect are *In re Northwestern Indiana Tel. Co.*, 201 Ind. 667, 171 N. E. 65, and *Natatorium Co.* v. *Erb*, 34 Idaho, 209, 200 Pac. 348.

Should issue be raised on the question of priority in the water rights of Madison River, the commission's finding on that issue would not be a judicial determination of the question. Section 3882, Revised Codes, specifically guards against that conclusion and specifically saves the right of either party to the controversy to have a judicial review of the question. That is the utmost contemplated by section 3882. It was not intended by that

section to restrict the commission in making findings of fact upon which to base an order, but its sole purpose was to declare that those findings should not be given the effect of judicial findings. Concededly whatever order is made by the commission is subject to judicial review.

At one time the Montana legislature went so far as to declare that when the commission, after investigation and hearing, made an order it would be presumed reasonable, just and valid and, hence, should remain in force during the pendency of proceedings in court questioning its validity. (Sec. 3906, Rev. Codes 1935.) This statute the United States Supreme Court held dealt unfairly with the utility company; that it "definitely" denied to the utility company a plain, speedy and efficient remedy in the courts of the state. (*Mountain States Power Co.* v. *Public Service Com.*, 299 U. S. 167, 57 Sup. Ct. 168, 81 L. Ed. 99.) As a result of the coercive force of that decision, Chapter 56, Laws of 1937, was passed amending section 3006, the effect of which is that whatever order the commission may make, after full hearing and investigation, such order, to meet the essentials prescribed by the United States Supreme Court as fair treatment of the utility company, will be presumed to be unreasonable, unjust, confiscatory and invalid to the extent that its enforcement may be enjoined until it has run the gauntlet of judicial scrutiny.

My associates declare that the statutes do not empower the commission to interfere with the acts or practices of the utility company where, as here, the acts or practices complained of affect those not patrons of the utility company; and that the clause "affecting or relating to the production, transmission or delivery or furnishing of heat, light, water or power, or any service in connection therewith," must be construed as having application to those only who use the service or product of the company. The wording of the statute, in my opinion, does not bear out this holding. Its provisions may be availed of by any person "directly affected" by the practices or acts. Complainants here are directly affected by the storing of the waters

of Madison River. The acts and practices of storing the waters affect and relate to the production, delivery and furnishing of light and power within the terms of the statute. That the authority of the commission extends further than the fixing of rates, we have already held. In *Great Northern Utilities Co.* v. *Public Service Com.*, 88 Mont. 180, 293 Pac. 294, this court said: "Legislation affecting public utilities, in its earlier stages, had as its chief purpose the prevention of exorbitant charges being made for the product furnished. As the field covered by these utilities broadened, it became apparent that the public interest extended further than merely fixing of charges; that there was embraced as well the character of the service to be rendered, the kind of equipment employed; and that these things, and *others*, are so interdependent that one may not be intelligently regulated without control being exercised over the others."

In *Postal Tel.-Cable Co.* v. *Railroad Com.*, 197 Cal. 426, 241 Pac. 81, the question presented was the authority of the commission to order a horizontal separation of power and telephone lines. The supreme court of California, in speaking on the question, said: "We entertain no doubt but that the authority of the commission extends to a correction of just such dangers as were shown to exist in the instant case. No one would dispute the right of the commission to require a separation of two railroad tracks built so closely together as to endanger the safety of passengers and the general public or its power to order a wider separation of two high-power electric lines so close in parallel as to be an admitted menace to life and limb. The difference between the instanced cases and the instant case is in degree only." There is here no contention that the Power Company is not a public utility; in other words, its business is affected with a public interest, and, therefore, is subject to regulation. (*Munn* v. *People of Illinois*, 94 U. S. 113, 24 L. Ed. 77.)

Whether the state, through the Public Service Commission, may regulate a public utility to the extent of protecting solely

a private right need not here be determined. In this state the use of all water for beneficial use is a public use. (Const., Art. III, sec. 15.) Interference with the beneficial use of waters is an interference with a public use. It has come to be recognized that the availability of waters in this state for agricultural purposes spells victory or defeat in agricultural pursuits. It is well known, too, that the failure of farmers to produce a crop creates distress among other lines of business, adds to the relief rolls and generally affects the public interest.

If, after investigation and hearing, the commission finds that the Power Company is so using its property as unnecessarily to injure complainants, or is in effect depriving claimants of rights of property superior to those of the utility company, I see no reason why the commission has not the jurisdiction, under section 3897, Revised Codes, to order the discontinuance of such acts and practices.

It is well established that public service commissions may be given authority to control and supervise security issues by public utility companies. The reason for this is the protection of both the investor and the ratepayer by preventing the impairment of credit by overcapitalization and rendering the company incapable of furnishing adequate service. (1 Spurr on Guiding Principles of Public Service Regulation, pp. 54 to 58; *Petition of Derry Elec. Co.,* 88 N. H. 46, 184 Atl. 356.) So here, if the allegations of the complaint are true, the utility company may be rendering itself liable to a number of damage actions which may ultimately result in interfering with necessary maintenance and depreciation reserves or otherwise impair the credit of the company, and thus actually affect ratepayers.

The utility company suggests that the maximum right of the Public Service Commission is to disallow any such expenses as items of operating expenses in determining the reasonableness of rates. With this I do not agree. In *Ohio Central Telephone Corp.* v. *Public Utilities Com.,* 127 Ohio St. 556, 189 N. E. 650, the question was presented whether the commission could prevent the payment of dividends, unwarranted fees and service charges

to holding companies, their officers and employees. The court held that the commission had that right, saying: "The payment of dividends and charges from moneys that should be put into the depreciation fund for proper purposes is in effect payment out of capital. (*Michigan Public Utilities Com.* v. *Michigan State Tel. Co.*, 228 Mich. 658, 200 N. W. 749; *Monroe Gaslight & Fuel Co.* v. *Michigan Public Utilities Com.*, (D. C.) 292 Fed. 139.) Deterioration of the property for want of the replacements and renewals such funds should provide works a diminution of the capital of the company. Such payments, if persisted in, must ultimately result in the impairment of the public service to which the property is dedicated." While the Ohio statutes are not the same as those of Montana, I think ours are sufficiently broad to warrant the commission in preventing a utility company from engaging in practices and acts which may subject the company to damage actions to the ultimate injury of its patrons.

Nothing that I have said herein is to be construed as indicating that I am of the view that the utility company is subjecting itself to liability. That question is not before us. It is my view that the commission has jurisdiction to hear the complaint and to enter such order as to it seems reasonable.