Zimmerman, J.
Assigned by the company are 19 specific errors, which for the purpose of this discussion will be grouped.
The first five assigned errors concern the power of the commission to have held the rehearing in the city of Elyria and to have conducted it as a hearing de novo and the complaint that at least part of the evidence could and should have been presented at the original hearing and was not proper on rehearing.
The Public Utilities Commission is a body vested with broad discretionary powers as to both the conduct and the place of its hearings. It was recognized by the General Assembly that in order to have a complete hearing on utility matters it might be more feasible for the commission to hold its hearings in the area served by the utility rather than at the commission’s headquarters in the state capital, and thus the General Assembly placed such matter within the discretion of the commission by the provisions of Section 614-44a, General Code.
As has been observed, the company complains that much of the evidence offered at the rehearing could and should have been presented at the original hearing-in Columbus, and that its reception and consideration on rehearing- contravened Sections 543 and 614-43, General Code. From a theoretical standpoint this contention is not without merit. However, the law should be reasonably interpreted to the end that the commission may have all the relevant facts before it to enable it to reach a just and correct conclusion.
A great deal of the evidence objected to by the company as being improper on rehearing, for the reason that it was available and could with reasonable diligence have been produced on the original hearing, consisted of testimony of patrons or would-be patrons of the company. True, this evidence might have been *445 produced at the original hearing in Columbus, but, as a practical matter, it was not readily obtainable because it consisted of the testimony of witnesses who were working people and could afford neither the loss of time away from their employment nor the expenses which would have been incurred in travelling to Columbus to attend the original hearing.
Considering the first five assigned errors in the light of the broad discretionary powers accorded the commission, we can not fairly say the commission erred either as to the place of the rehearing or as to the manner in which it was conducted.
The next question concerns the power of the commission to condition a rate increase on the completion of certain improvements in the facilities of the company in view of a prior finding that the pre-existing rates are inadequate when computed in relation to the existing company property.
In its original order, the commission, basing its conclusion on a valuation determined by its own staff, found that the current rates were inadequate, and that the requested rates were reasonable, having regard for the value of the existent company property. It must be remembered that we are not here faced with a question of valuation since all parties agreed to accept the commission’s valuation; the question is whether when it is found that existing rates are inadequate an increase can be conditioned on an improvement of services and facilities.
From an examination of the record it is apparent that the commission was justified in its determination that the current rates were inadequate to provide a fair return on the company’s property. After determining this, it became the duty of the commission to set just and reasonable rates under the provisions of Section 614-23, General Code. Nowhere in the statutes *446 can we find authority on the part of the commission to condition an increase in rates, under such circumstances, on an improvement of service.
There is, of course, no doubt that a utility must render adequate service to its patrons, and the General Assembly recognizing that at times service might be inadequate has provided a means whereby a utility may be compelled by the commission to improve its services and facilities. The commission has the power to require adequate service under Sections 614-21 and 614-27, General Code, but services and rates, although related, are not wholly dependent on each other. As to rates the question is whether the company is receiving a just and reasonable return on the value of its existing property; the question as to adequate service is whether the company is rendering or is capable of rendering reasonable service with its existing property or whether by improvements, either in the use of the property it owns or by new installations, this can be done. Under the provisions of Sections 614-27 and 614-28, General Code, the commission has ample power to require adequate service but it lacks the authority to demand that certain installations and improvements be made before the company may claim and receive just and reasonable rates for the services actually being rendered.
Although it may be true that there should be a connection between rates and service, the record here shows the company was rendering at least fairly adequate service. It had expended over $1,000,000 in the last 10 years for new equipment, was aware of certain inadequacies in the service and was attempting to correct the same by new construction. Furthermore, the company was faced with emergency conditions which created, and still create to some extent, difficulty in procuring new equipment. At the same time an un *447 precedented demand for service existed and still exists. Under sncli facts, where the commission finds that rates being charged are inadequate it can not arbitrarily condition an increase in rates on an improvement of services and facilities.
There is still another aspect to the problem. A utility to survive must receive a fair return on its property. Otherwise capital will not be attracted to furnish the funds for the new equipment needed to meet the demands of increased population and the consequential necessity for increased service. The commission’s order as made has the effect of creating serious difficulties for the company. A situation is present where the company needs an increase in rates to attract capital to buy new equipment and to meet increased demands, and the commission says, in effect, “we will give you the new rates to attract the new capital to purchase new equipment when you show that you have installed the new equipment.” Adoption of such an attitude would hamstring the utility.
A public utility commission may not so act as to confiscate the property of a utility, and where it is determined that adequate rates do not exist, an order granting an increase but suspending the same until such time as certain facilities and improvements are provided does have that effect. Upon the record in this case, the commission erred in suspending the increased rates until such time as the services and facilities have been improved.
The next question arising is whether the commission can require that its approval be secured before the company can declare and pay dividends.
It is undoubtedly true that a utility conducts a business so closely related to the public interest that it is subject to extensive control and regulation. Nevertheless, it is still an independent corporation and pos *448 sesses the right to regulate its own affairs and manage its own business, unless in doing so a situation develops which is inimical to the public interest. See City of Cleveland v. Public Utilities Commission, 102 Ohio St., 341, 131 N. E., 714.
The Public Utilities Commission is a creature of statute and has only those powers given it by statute. City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270, 117 N. E., 381. Its powers do not include the right to manage utilities or dictate their policies. West Ohio Gas Co. v. Public Utilities Commission, 128 Ohio St., 301, 191 N. E., 105, reversed on other grounds, 294 U. S., 63, 79 L. Ed., 761, 55 S. Ct., 316.
In the present case, the commission evidently concluded that in view of needed improvements in the company’s property and an increased depreciation reserve it was not sound policy to make such payments out of earned surplus. Therefore, in its order the commission provided that its approval should be obtained before dividends could be declared and paid.
To support such order the commission cites and relies on the case of Ohio Central Telephone Corp. v. Public Utilities Commission, 127 Ohio St., 556, 189 N. E., 650, the syllabus of which reads:
“The Public Utilities Commission of Ohio has power to prohibit a public utility corporation from paying dividends to its stockholders, and unwarranted fees and service charges to holding companies, their officers and employees, when there are neither earnings nor surpluses from which such payments may properly be paid, and the continuation of such payments will result in a deterioration of its properties and impairment of its service to the public.”
That case is not authority for the action of the commission in the circumstances disclosed by the instant controversy. Here we have a company with a large *449 earned surplus and which has paid dividends out of either its earnings or such surplus. Examining the syllabus above quoted, it is apparent that the restrictive powers of the commission with respect to the payment of dividends are confined to cases where there are neither earnings nor surplus. Granting that it may not have been a sound procedure for the company to divert so much of its net earnings to dividends, it was after all a matter for decision by the company, and the restrictive order of the commission constitutes not only an interference with corporate management but is beyond the statutory powers of the commission.
The final part of the order to be considered is that in which the company is directed to include in its rate-base area a territory designated as the “Gulf Road area.” The company maintains that this portion of the order is void since it is indefinite as to the limits' and extent of the area. It is not argued, however, that the commission did not have authority to make an order of this kind. That part of the order complained of pertaining to the “Gulf Road area” is subject to correction and definition by the commission. Consequently, it is not void but does require the clarification which the commission can and should make.
We have noted and considered all the errors advanced and have discussed those found to be meritorious.
Upon the basis of what has been said, the order of the commission is approved in part and disapproved in part and the cause is remanded to the commission for further proceedings in harmony with this opinion.

Judgment accordingly.

Weygandt, C. J., Middleton, Taft, Matthias, Hart and Stewart, JJ., concur.