## STANDARD MATERIALS, INC., v. MASSACHUSETTS FIRE AND MARINE INSURANCE COMPANY.

Common Pleas Court, Franklin County.

No. 171201.   Decided January 6, 1948.

Knepper, White & Dempsey, Columbus, for plaintiff.

Joseph M. Harter, David M. Postlewaite, Columbus, for defendant.

### OPINION

By GESSAMAN, J.

This case is submitted to the court on the pleadings, an agreed statement of facts and the briefs of counsel.

Briefly stated, the facts are that late in 1945 plaintiff purchased six used Mack trucks from The Ohio Fuel Gas Co., four of which were delivered in October, 1945.  One Nick Cenci asked the president of plaintiff corporation if he, Cenci, could buy one of the trucks whereupon the president told Cenci that two more were to be delivered and that Cenci could have one of them.  Some time later the two trucks were delivered and one was moved to Mr. Cenci's place of business.  The certificate of title to this truck (bearing the assignment in blank of The Ohio Fuel Gas Co.) was turned over to Mr. Cenci's son by the president of plaintiff corporation.

Thereupon, Mr. Cenci gave to an officer of plaintiff $1100.00, the full sale price of the truck and this money was immediately turned over to the agent of The Ohio Fuel Gas Co. This certificate of title, assigned as above described remained in the possession of Cenci until sometime after the fire to which we shall shortly refer. At no time was any of plaintiff's money tied up in this truck.

Plaintiff was having its five trucks remodeled and Cenci asked if he could have his remodeled in the same way by the same company and that was done. The bill for the work on the six trucks was paid by plaintiff who was immediately reimbursed by Cenci for the work on his truck. He then had a dump body installed and the motor reconditioned and the truck was delivered to him (Cenci).

During the latter part of January, 1946, Cenci discovered that this truck, when loaded, was too heavy to be used legally on the highways of the state and offered to sell it to plaintiff for $2124.40. An officer of plaintiff then agreed with Cenci that plaintiff would purchase said truck when plaintiff had a need for it, payment therefor to be made at plaintiff's convenience within 90 days.

A few days later plaintiff had need for the truck and took it to Congo, Perry County, Ohio where it used it for two days. At the end of the second day the differential broke, was repaired at plaintiff's garage, was again used but was burned and totally destroyed by fire when plaintiff's garage caught fire on February 4, 1946. At the time of the fire plaintiff had not paid Cenci for the truck nor had plaintiff paid anything thereon at the time of the commencement of this suit. Sometime after the fire an officer of plaintiff obtained said certificate of title and on April 13, 1946, procured a certificate of title to said truck to be issued in its name under §§6290-2 to 6290-20 GC.

On the date of the delivery of this truck to plaintiff and on the date of the fire there was in full force and effect policy No. A40445 issued by the defendant, insuring all automobiles owned by the plaintiff. Said policy provided in part as follows:

"* * * If the insured who is the owner of the automobile acquires ownership of another automobile and so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date. * * *"

Within thirty days after the date of the delivery of said truck to plaintiff, but subsequent to said fire, plaintiff notified defendant that it claimed that it had acquired ownership of said truck on said delivery date and that it owned same on the date of the fire. Defendant denied this and refused payment for the destruction of the truck. The question presented is, therefore; Had the plaintiff acquired ownership of the Mack truck prior to the fire?

At common law, the sale of a motor vehicle could be consummated by delivery of the vehicle to the buyer with the intention of passing title. 42 C. J. 765, Sec. 279 "Motor Vehicles." But in most states the common law has been superseded by statutory rules concerning the transfer and sale of motor vehicles. In Ohio the "Bill of Sale" law came into existence in 1921 and in its first pronouncement under that law our Supreme Court held (1924) in the case of **Ohio Farmers Ins. Co. v. Todino, 111 Oh St, 274**, that the buyer of an automobile, to whom the seller did not execute a bill of sale, was not the sole and unconditional owner of the automobile. The statute, in that case, was strictly construed. The court followed that policy until 1929 when it decided the case of **Commercial Credit Co. v. Schreyer, 120 Oh St, 568**, reversed its former decision and held that (syl. 3):

"Any assignment or transfer of a motor vehicle (not violative of the uniform sales law of this state) which is not executed and delivered in compliance with §§6310-3 to 6310-14 GC, but which is accompanied by delivery of possession, is nevertheless a valid contract between the parties thereto."

It further held that (at p. 585):

"The act of 1921 had a definite purpose which is expressed in its title. It is a penal statute which was not intended to affect the validity of contracts, or titles, or rights of property."

Therefore, subsequent to 1929, the buyer of an automobile who secured delivery thereof with the intention to pass title, becomes the owner thereof although, in fact, he did not secure a bill of sale. (Parenthetically, we should point out that we are not considering nor do we think it necessary to consider, in this case, the uniform sales act or statutes relating to conditional sales and chattel mortgages.)

In 1937 the legislature enacted the "Certificate of Title" act in substantially its present form. A few of the sec-

tions were amended in the same year in details not here pertinent. In this act, it is provided, among other things that:

"No person except as provided in the preceding section shall sell or otherwise dispose of a motor vehicle without delivery to the purchaser or transferee thereof a certificate of title with such assignments thereon as may be necessary to show title in the purchaser, nor purchase or otherwise acquire a motor vehicle unless he shall obtain a certificate of title for the same in his name in accordance with the provisions of this chapter." **Sec. 6290-3 GC.**

And also that:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer, or otherwise, hereafter shall acquire any right, title, claim or interest in or to said motor vehicle until he shall have issued to him a certificate of title to said motor vehicle * * *. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle hereafter sold or disposed of * * * unless evidenced by a certificate of title * * * duly issued, in accordance with the provision of this chapter." **Sec. 6290-4 GC.**

Do these provisions change the rules of law that prevailed in this state following the decision in the Schreyer case, supra?

The present statutes were before the Supreme Court in 1940 in the case of **Automobile Finance Co. v. Munday, 137 Oh St, 504, 19 O. O. 176,** which was an action in replevin by the mortgagee of an automobile to recover possession as against the purchaser thereof and one Munday. The purchaser had not secured the certificate of title. In denying the writ the court said that: (p. 521)

"However, there was no burden on the defendant below (the purchaser) to show any title or right of possession. The burden was on the plaintiff below * * * to show an unlawful detention by the defendant of a chattel of which the plaintiff below was owner or in which he had some interest, and of which plaintiff was entitled to immediate possession."

And the court went on to hold that the plaintiff, under the facts of the case, "was not entitled either to the right of property or the right of possession of this automobile." There-

fore the question here presented was not before the court in the Munday case. The most that can be said for that case is that Judge Matthias said in a concurring opinion, that the purchaser "had and still has the right to demand and, if refused, to secure by appropriate court action, a certificate of title for this car." All of which is correct, for it was the duty of the seller, a dealer, to secure the certificate of title for the purchaser (§6290-5 GC).

In the later case of **Workman et al., d. b. a., v. The Republic Mutual Ins. Co. 144 Oh St 37, 28 O. O. 564,** ownership was declared to be in the purchaser who, at the date in question, had not yet secured her certificate of title. The court held as follows in syl. 3:

"Where the insured sold an automobile and delivered possession thereof to the purchaser who signed an installment note for the purchase price, executed a chattel mortgage securing the same, signed an application for transfer of the certificate of title which the vendor had delivered to the purchaser, and redelivered the same to the vendor for filing in an adjoining county within the three days permitted by law, actual ownership with complete possession and control proved to the purchaser."

One question in that case was whether Mrs. Rhodes, the purchaser, was the **owner** of the car on the date of an accident in which the car was involved. The accident occurred on the day following the delivery of the car to Mrs. Rhodes. It was the duty of the seller to obtain the certificate of title for Mrs. Rhodes (§6290-5 GC) within three days and obviously three days had not elapsed on the day of the accident and therefore the provision of the certificate of title act had not been disregarded. The purchaser had done everything that she could do to secure not only ownership of but title to the car. However, we are still faced with the question as to whether ownership would have passed to the purchaser if the pertinent elements, outlined in syl. 3 had not existed. That is to say, if the provisions of the Certificate of Title law had been disregarded entirely, what would the decision of the Supreme Court have been? Upon that precise question there appears to be no decision as yet, in this state.

In the instant case there was delivery of the truck to the buyer with the intention to pass title. At common law that would have consummated the sale. But the Certificate of Title law had been completely disregarded both by the seller and the buyer although ample time had elapsed—including

the mandatory period of three days, §6290-5 GC—for compliance therewith. In such a situation, to hold that plaintiff was the owner although not the holder of the title to the truck would, in our opinion, constitute complete disregard for the positive language of §6290-4 GC. As we have already pointed out it provides, in part, that "* * * no person shall **acquire** any right, title, **claim** or **interest** in or to said motor vehicle **until** he shall have issued to him a certificate of title * * *." And that, "No court * * * shall recognize the right, title, **claim** or **interest** of any person in or to any motor vehicle * * * unless evidenced by a certificate of title * * *." That is positive language and it is not ambiguous. The right of ownership of a motor vehicle is obviously a claim or interest in a motor vehicle and by the provision of the law no person may **acquire** nor may any court recognize such ownership without a certificate of title. From October, 1945 to January, 1946 Mr. Cenci had either actual or constructive possession of the truck but had made no effort to secure the issuance of a certificate of title to him although he had the old certificate with the blank assignment of The Ohio Fuel Gas Co. in his possession. Therefore, it seems quite clear that Mr. Cenci did not acquire any right, title, claim or interest in or to the truck, at least, which a Court could recognize and enforce. When the truck was delivered to the plaintiff the old certificate of title was not then passed to plaintiff, no effort was made to secure it and of course no certificate of title was issued to plaintiff until long after the fire. It seems clear, therefore, that plaintiff, likewise, did not **acquire** any right, title, claim or interest in or to the truck **before** the fire, at least, any which the court could recognize and enforce.

But, counsel for the plaintiff claim, it did notify the defendant within thirty days after it had received delivery of the truck, that it claimed it had acquired ownership thereof, and that it acquired title thereto on April 13, 1946 and that therefore the insurance shall apply as of the delivery date. But the policy provides that:

"* * * if the insured * * * acquires **ownership** of another automobile and **so** notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date."

In order to notify the company (dwefendant) that it had acquired ownership, it must have **prior thereto** acquired ownership—not just possession. The policy provides that plain-

tiff must "**so** notify the company." The word "so" obviously refers back to the words "acquires ownership." Therefore, it appears to be beyond any doubt that the notice must be given within thirty days after the delivery date but that the notice must be to the effect that the insured has acquired ownership. In the instant case this could not have been done for the reason that the plaintiff had not acquired ownership prior to giving the notice. Ownership was acquired later. It appears clear that, by virtue of the terms of the policy, **ownership,** not just possession, must be acquired **before** the notice is given and that said notice must be given within thirty days after the date of delivery. Therefore, it follows that ownership would have to be acquired within thirty days after date of delivery and before notice was given. That was not done in this case.

It is our conclusion, therefore, that the court must deny the prayer of the petition and find for the defendant.

Since writing this opinion the attention of the court has been directed to the case of **Mielke v. Leeberson, 150 Oh St 528, 38 O. O. 352.** The syllabus of that case is as follows:

"Under the plain and unambiguous language of §6290-4 GC, a Court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment."

In that case the plaintiff was suing for damages to his automobile. He testified that he was the owner, was referred to as the owner during the trial, but he did not produce his certificate of title. He secured a judgment in the Common Pleas Court. Of this situation the court said, at p. 535 of the opinion:

"In our view of the case, since there was evidence of plaintiff's ownership, although such evidence **can never be sufficient without the production of a certificate of title,** the proper procedure is a reversal and a remanding for a new trial." (Emphasis ours.)

The decision in this case substantiates the conclusions which we have already reached

The defendant also contends that the sale, if any, from Cenci to the plaintiff was a conditional sale and that, therefore, plaintiff may not recover because of a provision of the policy of insurance which excluded coverage of an automobile subject to a conditional sale. In view of the opinions already expressed herein, it will not be necessary to consider this contention.

Entry may be drawn accordingly and exceptions noted.