STATE, ex rel. JAN ROSS MOTOR CO., INC., Plaintiff-Relator, v. KING, Clerk of Courts, etc., et, Defendants-Respondents.

Common Pleas Court, Franklin County.

No. 200698. Decided August 4, 1959.

Thomas W. Applegate, for plaintiff-relator.
Earl W. Allison, Pros. Atty., Mark McElroy, Atty. Genl., for defendants-respondents.

## OPINION

By SATER, J.

The pleadings and record in this case show that relator brings this action in mandamus to compel respondents to issue to it in its own name an Ohio certificate of title to a new motor vehicle to which vehicle relator already holds a Manufacturer's or Importer's Statement of Origin. To buttress its action relator relies on **Chapter 4505 R. C.**; but the two pertinently operative sections of this chapter. viz: **§4505.04** and **4505.05 R. C.**, secure title to a motor vehicle in whoever holds either an Ohio certificate of title or a Manufacturer's or Importer's Statement of Origin, depending on the disposition to be made of the vehicle, ultimate consumer use, or resale as by a dealer in motor vehicles.

Thus, the Court finds itself in the anomalous position of being asked by relator to require respondents to confirm, rather than to newly create, in relator a title which it already holds. **State, ex rel. etc., v. Taggart, 134 Oh St 374, Re Estate of Case, 96 Oh Ap 289, Mielke v. Leeberson, 150 Oh St 528, and Standard Materials, Inc. v. Ins. Co., 58 Abs 393,** all recognize the duality of certificate and statement, and the self-sufficiency of either as the facts of any particular case may indicate.

Relator is indubitably a locally domiciled Ohio corporation licensed to deal in motor vehicles according to the terms of its dealer's license. To its application for an Ohio certificate of title to be issued to it in its own name, relator attached both a Manufacturer's or Importer's Statement of Origin for the motor vehicle in question, a 1957 Morris Minor 10-passenger bus duly identified by model and serial number, showing under oath that title to such vehicle, new, unencumbered and unregistered in any other state, had passed successively from Royston Distributors, Inc., Philadelphia, Pa., to Pringle Motor Service, Clarksburg, W. Va., and thence to relator, and also a purported power of attorney the necessity and sufficiency of which latter document is problematic. Respondents first issued to relator the desired Ohio certificate and then for reasons that then seemed sufficient to them cancelled it, refusing later issuance. In passing, we note that this Court is not bound by the reasoning underlying respondents' official action so long as they arrived at the correct conclusion, "though the proceeding is shot through and through with irregularity or error." West Ohio Gas Co. v. P. U. C. O., 294 U. S., 63, 70; 79 L. ed. 761, 768.

Suffice it to say that on refusal of issuance of the Ohio certificate relator applied for this writ. It alleges lack of any other remedy, but that assumes that it needs a remedy. It is further alleged that it has done everything required by law to secure the Ohio certificate but that is valid only if that effort is necessary to create, not to confirm title in it by duplication of indicia of title. And, consequently, its allegation that it can legally acquire title to the motor vehicle only through respondents' action assumes that it has not already acquired title by its Statement of Origin and the action of the statutes noted above.

It is a fundamental principle that courts will not employ their coercive powers to compel the doing of a useless thing. Particularly is this true with respect to such a summary and expeditious process as mandamus. The writ is invariably withheld where it will be unavailing, nugatory or useless and its issuance an idle act. The writ will not be issued to compel the doing of a vain thing. **State, ex rel. etc., v. Fimple, 91 Oh St 99, 101.** Or to affirm what has already been done. **State, ex rel. etc., v. Commission, 121 Oh St 352.** As was said in **State, ex rel. etc., v. Celebrezze, 147 Oh St 24, 26,**

"It is well settled by the numerous decisions of this court that in exercising the extraordinary power of mandamus a court should take into consideration the facts and conditions existing at the time it determines whether to issue a peremptory writ; if it should affirmatively appear that no wrong could possibly be remedied or no right could possibly be enforced or promoted, the writ will be refused. **State, ex rel. Stover v. Raschig, Dir., 141 Oh St 477, 49 N. E. (2d), 56, and cases therein cited.**"

For more recent cases, see **State, ex rel. etc., v. Klein, 88 Oh Ap 237, 242,** and **State, ex rel. etc., v. Silbert, 79 Abs 562.** If one with no interest must fail (**State ex rel. etc., v. Miller, 164 Oh St 163**), so also must one whose interest is already attained.

In the case before us relator holds an unquestioned Statement of Origin; further the record is absolutely silent that relator has a general purchaser for the motor vehicle; further, the lack of even a prospective

buyer is strongly explained by the fact that relator seeks a certificate in its own name rather than in the buyer's name as is to be expected under §4505.06, par. 2 R. C. Relator, consequently has all the indicia of title that it presently needs. In view of the foregoing, the writ must be denied.

Since relator on the record lacks a buyer, we are not presently concerned with **Board v. Memphis Auto Sales, 103 Oh Ap 347**, wherein the operative facts are so meagerly set forth that little can be gleaned therefrom except that dealer Memphis had neither manufacturer's contract of distribution nor statement of origin, and that that case was not one sounding in peremptory mandamus. When relator comes up with that general purchaser, there may well arise the question whether there exists prohibition of lawful occupation or mere regulation thereof as against unlimited indiscriminate competition which the Memphis case decries. Whether there will be involved §4517.06 **(D) R. C.**, as in the Memphis case, or §4517.02E **R. C.** Why relator, nine months after the Memphis case came down, should amend its dealer's license (see exhibit D) to include new cars of three foreign manufacture but still omit Morris Minor vehicles even after acquisition of the vehicle here in question. Whether the authorization (see photostatic exhibits D and E), to sell new vehicles being left blank, vests it with blanket authority to sell all sorts of new motor vehicles regardless of make or manufacturer. Whether that blank justified relator in selling for five years a variety of new vehicles such as Jaguar, Cadillac, Volvo, M G, Oldsmobile, Buick, Chevrolet and Pontiac. Whether witness John Ross of relator company was authorized to sell such cars new simply because relator had sold so many of them for so many years. What would become of the State's statutes and power to regulate if Ross's assumption on this matter were correct. Whether the State's power to regulate, conceded in the Memphis case, will be served or crippled by authorizing any one dealer to sell both new and used vehicles, or whether that practice leads the general buyer directly back to the pre-statute days of caveat emptor. Whether Memphis case is broad enough in doctrine to embrace witness Ross' use of dummy leasing companies and his apparent familiarity with what he calls "bootleg" sales of motor vehicles. But since none of these questions is before us, the petition for a writ is as to them as premature as it is useless to the other.

A matter of decidedly secondary nature may at some future time arise either in this case or in some companionate litigation.

The garbled condition and sequence of the pleadings and events in this case lends superficial credence to the idea that the doctrine of the law of the case controls here a ruling on the merits. An examination of those pleadings in chronological order will never explain their tortuous and unbelievable sequence, but it will disclose the inapplicability of the doctrine of the law of the case We take the pleadings as stated.

(1) On March 4, 1958, there was filed herein a "Petition in Mandamus" praying issuance of an Ohio certificate of title, and accompanied by a precipe for summons. An hour later an alternative writ was issued. We are not favored with a transcript of what happened that day; so far

as the file discloses, the signing of the writ was routine; (2) Eleven days later on March 15, 1958, an "Amended Petition In Mandamus" was filed. Since this is the petition upon which relator finally went to trial, four matters should be immediately noted. First, no motion, demurrer or other interlocutory pleading was ever filed to it; second, the wording of this amended petition is identical with that of the original except for the hand written allegations · that sales tax stamps were not attached to relator's application to respondents because the desired certificate of title was for the purpose of resale—**not for relator's own use;** third, from what appears later in the file, this amended petition was filed because at some unknown time or other, some unknown member of this Court had sustained respondent King's "oral" motion to strike the original petition from the files; fourth, when this motion was made, to whom it was made, and on what it was based, are all unknown. Incidentially, no written leave is shown to file this amended petition. (3) On March 21, 1958, six days after the filing of the amended petition, respondents filed a demurrer not to the **amended** but to the **original** petition on the ground that it contained insufficient facts to state a cause of action, and was directed entirely and solely to non-payment of the Ohio sales tax. Why such a pleading should ever be filed beggars the imagination. This demurrer was never pressed for hearing and decision as our rules of Court require. (4) On April 9, 1958, twenty-five days after the amended petition had been filed by relator, relator filed its motion to reconsider the "oral" motion—still undated—of respondent King to strike the **original** petition from the files which was sustained on March 22, 1958. Why this motion was ever filed is also beyond the comprehension of this member of the Court: like the demurrer if it were overruled, nothing would be added to the case, if it were sustained the amended petition would go by the boards. (5) Despite that, a second member of this Court in a written opinion dated May 2, 1958, sustained the motion to reconsider. Solely for the purpose of expediting disposition of this case, we will pass any question whether this opinion did nullify the amended petition by, in effect, reinstating the original petition. This opinion was journalized May 20, 1958. (6) On May 31, 1958, respondents filed their answer described above to the **amended** petition. (7) On June 11, 1958, about five minutes before this case was heard on the merits, relator filed its reply also described above. (8) The remaining five minutes was taken up by this member of the Court signing and having filed an agreed entry overruling the demurrer nunc pro tunc any convenient date between the filing of the demurrer and of the answer and reply. That this member of the Court had had no opportunity to see, much less examine, the file in this case before the entry was handed up to him in what is now an obvious effort by the parties to ready the case for trial on the merits, is immaterial; what is material is the fact that all motions, demurrers, opinions and entries subsequent to the filing of the amended petition do not touch it and are simply so much paper.

Certainly such an amazing sequence can produce no law of the case. But if it did, the individual judge who tries a case has a right at the

time the final judgment is rendered to correct any error of law that may have been made in any interlocutory orders or rulings, whether they have been made by himself or by any other judge of that court. **Pagel v. Creasy et al, 6 Oh Ap 199, 204,** Monfort v. Ellis, 16 O. C. C. n. s., 225, 243, 244.

Submit entry in accordance with the foregoing with exceptions to relator.